# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| Donte Darrell Parrish | CIVIL ACTION NO. 1:24-CV-00670 |
| Plaintiff, | |
| v. | (Judge Munley) |
| | (Magistrate Judge Latella) |
| Mike Muldrow, et al., | |
| Defendants. | |

## REPORT AND RECOMMENDATION

### I. Introduction

Donte Darrell Parrish, a *pro se* incarcerated plaintiff, brought suit against Mike Muldrow, who Plaintiff identified as "York City Chief of Commissioner,"[1] Jennifer Clancy, a magisterial district judge in York County, and the York County Municipality. While the Complaint is not a model of clarity, it appears that Parrish was charged with an array of offenses including multiple firearms charges. He was arraigned on April 19, 2022, and denied bail. He claims that Commissioner Muldrow had a conversation with Judge Clancy prior to arraignment, and that this call influenced her decision to deny him bail. Parrish now brings suit under 42 U.S.C. § 1983 and various state laws. Plaintiff also includes an Equal Protection

---

[1] Per the Defense's Motion, his actual title is Commissioner of the York City Police Department.

Claim, asserting that York County has a habit of holding Black inmates while other inmates receive bail. Because the Defendants are entitled to their respective immunities and Plaintiff has failed to state any viable claims, it will be recommended that both Defendant Clancy and Defendant Muldrow's Motions to Dismiss be **GRANTED**.

## II. Procedural History

Plaintiff initiated this case on April 18, 2024, by filing a *pro se* Complaint against Defendants Mike Muldrow, Jennifer Clancy, and York County[2] Municipality. (Doc. 1). In that Complaint, Plaintiff details his grievances that stem from his Arraignment on April 19, 2022. A letter requesting to proceed *in forma pauperis* was initially filed on April 18, 2024 (Doc. 2), however, as it was not the correct *in forma pauperis* form, Plaintiff was given thirty days to pay the filing fee or file a correct, signed application. (Doc. 4). Plaintiff subsequently filed the certified motion on May 6, 2024 (Doc. 5), which Magistrate Judge Arbuckle granted by order May 28, 2024, deeming the Complaint filed. (Doc. 7).[3]

---

[2] It appears from the docket that Defendant York County has not been served.  By separate order, we have directed service upon this Defendant.

[3] The case was reassigned from Magistrate Judge Arbuckle to Magistrate Judge Caraballo on February 13, 2025. A consent form was sent to all parties on April 15, 2025 (Doc. 34); however, the deadlines terminated without parties returning the form. Therefore, the case was reassigned to Judge Munley on May 19, 2025, and

Defendants are proceeding separately from each other. On September 13, 2024, Defendant Clancy filed a Motion to Dismiss Plaintiff's Complaint (Doc. 22) along with a brief in support of that motion. (Doc. 23). Plaintiff filed his brief in opposition on September 30, 2024 (Doc. 26), and Defendant Clancy replied with her own brief on October 15, 2024. (Doc. 30). Plaintiff filed a sur-reply brief on November 21, 2024, without seeking leave of court. (Doc. 32).

On September 16, 2024, Defendant Muldrow filed a Motion to Dismiss Plaintiff's Complaint for Failure to State a Claim (Doc. 25) along with a brief in support of that motion on September 30, 2024. (Doc. 28). Plaintiff filed his brief in opposition on October 2, 2024 (Doc. 29), and Defendant Muldrow filed a reply on October 16, 2024. (Doc. 31). Plaintiff filed a sur-reply brief on November 21, 2024, again without seeking leave of court. (Doc. 33).

On May 22, 2025, Judge Caraballo filed an Order directing that Plaintiff's sur-replies be stricken as they were filed without Plaintiff seeking leave of court pursuant to Local Rule 7.7. In response, Plaintiff filed a Motion for Leave to File Sur-Replies on June 6, 2026 (Doc. 37), which was granted by undersigned on June

---

referred to Judge Caraballo. The case was thereafter referred to the undersigned on June 10, 2025.

16, 2025. (Doc. 38). Plaintiff's sur-replies were accepted as filed. The Motions to Dismiss are ripe for disposition.

## III. Background

This case began when Plaintiff was brought before York County Magisterial District Judge Jennifer Clancy for Arraignment on April 19, 2022, facing charges of: 1) Prohibited Possession of a Firearm; 2) Aggravated Assault; 3) Receiving Stolen Property; 4) Carrying a Firearm Without License; 5) Simple Assault; 6) Recklessly Endangering Another Person; 7) Strangulation; 8) Driving Under the Influence; 9) Driving While Operating Privileges Suspended or Revoked; 10) Accident with Damage to Unattended Vehicle or Property; and 11) Failure to Notify Police of Accident or Damage to Vehicle. (Doc. 23, p. 2). At this initial hearing, Plaintiff was denied bail. He inquired as to why bail was not set, and the Judge allegedly told him that it was "because [Commissioner] Mike Muldrow called down to the station and told them [Parrish] was a threat to the community." (Doc. 1, p. 2).

Plaintiff asserts that his rights were violated when he was denied bail without proper evidence presented or procedure followed. He also avers that he has noticed a pattern in the York County legal system where Black arrestees are consistently denied bail while their non-Black counterparts, sometimes charged

with more serious crimes, are granted bail. Plaintiff therefore brings legal claims under 42 U.S.C. § 1983, alleging violation of his due process rights, civil conspiracy to deny due process, violation of his equal protection rights, and, although not explicitly stated, violation of his Eighth Amendment right to bail. (Doc. 1, p. 3). Plaintiff also brings state law claims of negligence and intentional infliction of emotional distress. (Doc. 29, ¶ 11). He requests unspecified monetary damages and does not request injunctive relief. (Doc. 1, p. 3).

Defendant Clancy, represented by the Administrative Office of Pennsylvania Courts, filed a Motion to Dismiss (Doc. 22) and supporting brief. (Doc. 23). The Brief argues four reasons why the claims against Defendant Clancy should be dismissed: (1) The Complaint should be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6) as it fails to state a claim and pursuant to Rule 12(b)(1) as the court lacks subject-matter jurisdiction; (2) the claims are barred by Eleventh Amendment immunity; (3) the claims are barred by judicial immunity; and (4) the tort claims are subject to state law immunity. Plaintiff responded with a Brief in Opposition (Doc. 26) and asserts that Defendant Clancy is not entitled to Eleventh Amendment immunity because York County has received federal funding—which he incorrectly believes abrogates immunity for § 1983 claims—and that Defendant Clancy was also not entitled to judicial immunity, as she lacked subject-matter jurisdiction, and the denial of bail was a non-judicial act.

5

Defendant Muldrow filed his Motion to Dismiss for Failure to State a Claim (Doc. 25) and supporting brief. (Doc. 29). Muldrow presents numerous arguments in his initial brief coupled with his reply brief: (1) Plaintiff's Eighth Amendment and Due Process claims fail; (2) Plaintiff's negligence claim fails; (3) Plaintiff fails to plead a § 1983 conspiracy against Defendant Muldrow; (4) Plaintiff's Equal Protection claim fails; (5) Defendant Muldrow is entitled to qualified immunity; and (6) Defendant Muldrow is entitled to immunity under the Pennsylvania Political Subdivision Torts Claims Act. Plaintiff responded with a Brief in Opposition on October 2, 2024. (Doc. 29). Both Motions to Dismiss have been fully briefed and are ripe for disposition.

## IV. Standard of Review

### A. Federal Rule of Civil Procedure 12(b)(1)

A Rule 12(b)(1) motion is the proper mechanism to raise Eleventh Amendment immunity as a bar to the exercise of federal jurisdiction. *Blanciak v. Allegheny Ludlum Corp.*, 77 F.3d 690, 694 n.2 (3d Cir. 1996) (citing *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 98–100, 104 S. Ct. 900, 79 L.Ed.2d 67 (1984)). The plaintiff bears the burden of establishing the existence of subject matter jurisdiction when challenged under Rule 12(b)(1). *See Kehr Packages, Inc. v. Fidelcor, Inc.*, 926 F.2d 1406, 1409 (3d Cir. 1991).

6

A defendant may challenge the existence of subject matter jurisdiction in one of two fashions: it may attack the complaint on its face or it may attack the existence of subject matter jurisdiction in fact, relying on evidence beyond the pleadings. *See Gould Elecs. Inc. v. United States*, 220 F.3d 169, 176 (3d Cir. 2000); *Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977). A district court must first determine, therefore, whether a Rule 12(b)(1) motion presents a "facial" attack or a "factual" attack on the claim at issue, because that distinction determines how the pleading must be reviewed. *In re Schering Plough Corp. Intron,* 678 F.3d 235, 243 (3d Cir. 2012) (citing *Mortensen,* 549 F.2d at 891).

Where a defendant attacks a complaint as deficient on its face, "the court must consider the allegations of the complaint as true." *Mortensen*, 549 F.2d at 891. "In deciding a Rule 12(b)(1) facial attack, the court may only consider the allegations contained in the complaint and the exhibits attached to the complaint; matters of public record such as court records, letter decisions of government agencies and published reports of administrative bodies; and 'undisputably authentic' documents which the plaintiff has identified as a basis of his claims and which the defendant has attached as exhibits to his motion to dismiss." *Medici v. Pocono Mountain Sch. Dist.*, No. 09-CV-2344, 2010 WL 1006917, at *2 (M.D. Pa. Mar. 16, 2010). However, when a motion to dismiss attacks the existence of

subject matter jurisdiction in fact, "no presumptive truthfulness attaches to plaintiff's allegations," and "the trial court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case." *Mortensen*, 549 F.2d at 891.

Here, the Defense make a facial attack, as they "assert they are immune from Plaintiff's claims as pled." *Hicks v. NJ Dep't of Corr.*, No. CV 16-0927, 2017 WL 168917, at *2 (D.N.J. Jan. 17, 2017); *Garcia v. Knapp*, No. 219CV17946, 2020 WL 2786930, at *4 (D.N.J. May 29, 2020) ("Defendants, by asserting Eleventh Amendment immunity, raise a facial 12(b)(1) challenge. In so doing, Defendants do not necessarily dispute the facts asserted by [Plaintiff], but rather rely on immunity that the claims asserted bar this Court from jurisdiction."). Therefore, only the allegations in the Complaint and any documents referenced therein will be considered, and any inferences will be construed in the light most favorable to the nonmoving party.

### B. Federal Rule of Civil Procedure 12(b)(6)

Rule 8 of the Federal Rules of Civil Procedure states that a claim must include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a). This requires the Plaintiff to put forth evidence that, "when taken as true, suggest[s] the required elements of a particular

legal theory." *McNeilly v. City of Pittsburgh*, 40 F.Supp.3d 643, 650 (W.D. Pa. 2014). The Plaintiff must state "sufficient factual allegations which 'nudge' its claims 'across the line from conceivable to plausible.'" *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 680, 129 S. Ct. 1937, 1951, 173 L. Ed. 2d 868 (2009)). The purpose is to ensure "fair notice of the factual basis of a claim while raising a 'reasonable expectation that discovery will reveal evidence of the necessary element.'" *Id.* at 651.

Rule 12(b)(6) of the Federal Rules of Civil Procedure allows a defendant to move to dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). This means that a complaint may be dismissed if it does not present sufficient facts to support a plausible claim: "Under Rule 12(b)(6), a motion to dismiss may be granted only if, accepting all well-pleaded allegations in the complaint as true and viewing them in the light most favorable to the plaintiff, a court finds that plaintiff's claims lack facial plausibility." *Warren Gen. Hosp. v. Amgen, Inc.*, 643 F.3d 77, 84 (3d Cir. 2011) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555–56, 127 S. Ct. 1955, 167 L.Ed.2d 929 (2007)).

The court must accept both the Plaintiff's allegations and any reasonable inferences that can be drawn as true and construe them in the light most favorable to the non-moving party. *Monroe v. Beard*, 536 F.3d 198, 205 (3d Cir. 2008).

9

However, it need not accept "'unsupported conclusions and unwarranted inferences, or a legal conclusion couched as a factual allegation.'" *Morrow v. Balaski*, 719 F.3d 160, 165 (3d Cir. 2013) (quoting *Baraka v. McGreevey*, 481 F.3d 187, 195 (3d Cir. 2007)). Reciting the elements that make up a cause of action and supporting them with "mere conclusory statements" is insufficient to give those statements the presumption of truth. *McNeilly*, 40 F.Supp.3d at 650 (citing *Iqbal*, 556 U.S. at 678, 129 S. Ct. 1937).

When faced with a motion to dismiss pursuant to 12(b)(6), a court should conduct a two-part analysis: (1) separate the factual and legal elements of a claim; and (2) "determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a plausible claim for relief." *Id.* (internal citation removed). The court may consider facts alleged on the face of the complaint, as well as "documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Tellab, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322, 127 S. Ct. 2499, 168 L.Ed.2d 179 (2007). This analysis requires the court to look at the claims on a case-by-case basis and rely both "on its judicial experience and common sense." *McNeilly*, 40 F.Supp.3d at 650. The court will not be reaching legal conclusions, but instead is merely determining "whether the plaintiff should be permitted to offer evidence in support of the allegations." *Id.* (citing *Maio v. Aetna*, 221 F.3d 472, 482 (3d Cir. 2000)).

10

Furthermore, a *pro se* complaint, "however inartfully pleaded," must be held to "less stringent standards than formal pleadings drafted by lawyers" and can only be dismissed for failure to state a claim if it appears beyond doubt that the plaintiff can prove no set of facts in support a viable claim for relief. *Haines v. Kerner*, 404 U.S. 519, 520–21, 92 S. Ct. 594, 30 L.Ed.2d 652 (1972).

## V. Discussion

We first address Defendant Clancy's argument that the Complaint should be dismissed because Plaintiff's claims are barred by Eleventh Amendment immunity and then her argument that she is shielded from suit by judicial immunity. Next, we consider Defendant Muldrow's arguments for dismissal pursuant to Fed. R. Civ. P. 12(b)(6), based upon qualified immunity. Lastly, we will consider Plaintiff's state law claims against both Defendants Clancy and Muldrow.

### A. Defendant Clancy is Entitled to Eleventh Amendment Immunity or, Alternatively, Judicial Immunity

It is unclear whether Plaintiff is proceeding against Defendant Clancy in her individual or official capacity. (*See generally*, Doc. 1). Defendant Clancy argues that Plaintiff's claims should be dismissed based upon Eleventh Amendment immunity, which applies only to claims against state officials sued in their official capacity. (Doc. 23, pp. 6–8). Alternatively, she argues that the claims should be dismissed based upon judicial immunity, which applies only to claims against state

11

officials sued in their individual capacity. (*Id.* at 8–9). Each defense will be considered in turn.

    1. <u>Eleventh Amendment Immunity</u>

A claim against a defendant who is a state official, being sued in their official capacity for monetary damages, is barred by the Eleventh Amendment. *Hafer v. Melo*, 502 U.S. 21, 27, 112 S. Ct. 358, 362, 116 L. Ed. 2d 301 (1991). The Eleventh Amendment to the United States Constitution precludes private individuals from bringing suit against a state in federal court. U.S. Const. amend. XI; *see also Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 104 S. Ct. 900, 79 L. Ed. 2d 67 (1984). Such immunity may also extend to suits brought against "arms of a state." *Patterson v. Pennsylvania Liquor Control Bd.*, 915 F.3d 945, 950 (3d Cir. 2019) (quoting *Karns v. Shanahan*, 879 F.3d 504, 512–13 (3d Cir. 2018)); *Mt. Healthy City Sch. Dist. Bd. Of Edu. v. Doyle*, 429 U.S. 274, 280, 97 S. Ct. 568, 50 L.Ed.2d 471 (1977) (same). A party is considered an "arm of the state" for immunity purposes "when 'the state is the real, substantial party in interest.'" *Patterson*, 915 F.3d at 950 (quoting *Ford Motor Co. v. Dep't of Treasury of Ind.*, 323 U.S. 459, 464, 65 S. Ct. 347, 89 L.Ed. 389 (1945), *overruled on other grounds by Lapides v. Bd. of Regents of Univ. Sys. of Ga.*, 535 U.S. 613, 623, 122 S. Ct. 1640, 152 L.Ed.2d 806 (2002)).

Eleventh Amendment immunity "is a jurisdictional bar which deprives federal courts of subject matter jurisdiction," and may be properly considered by way of a motion to dismiss under Rule 12(b)(1) of the Federal Rules of Civil Procedure. *Blanciak v. Allegheny Ludlum Corp.*, 77 F.3d 690, 694 n.2 (3d Cir. 1996). "This jurisdictional bar applies regardless of the nature of the relief sought," including suits brought by plaintiffs in equity. *Pennhurst*, 465 U.S. at 100 (citing *Missouri v. Fiske*, 290 U.S. 18, 27, 54 S. Ct. 18, 78 L.Ed. 145 (1933)).

However, Eleventh Amendment immunity is not absolute. There are three narrow exceptions to Eleventh Amendment immunity: "1) congressional abrogation, 2) state waiver, and 3) suits against individual state officers for prospective relief to end an ongoing violation of federal law." *MCI Telecomm. Corp. v. Bell Atlantic-Pennsylvania*, 271 F.3d 491, 503 (3d Cir. 2001); *see also Ex parte Young*, 209 U.S. 123, 28 S. Ct. 441, 52 L.Ed. 714 (1908). The third exception is referred to as the *Ex parte Young* doctrine and applies to suits for prospective declaratory and injunctive relief against state officers, sued in their official capacities, to enjoin an alleged ongoing violation of federal law. *See MCI Telecommunications Corp.*, 271 F.3d at 507. "[A] suit against a state officer seeking prospective relief designed to end a continuing violation of federal law is not barred by the Eleventh Amendment under the theory that the action is not against the state because the alleged violation of federal law strips the officer of his

13

official authority." *Pa. Fed'n of Sportsmen's Clubs, Inc. v. Hess*, 297 F.3d 310, 323 (3d Cir. 2002) (citing *Ex parte Young*, 209 U.S. at 159–60; *Pennhurst*, 465 U.S. at 103).

With respect to claims brought pursuant to § 1983, where a suit is brought against a person in their official capacity, it is not seen as a suit against that person, "but rather [as] a suit against the official's office." *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989). Essentially, the official "assume[s] the identity of the government that employs them." *Hafer*, 502 U.S. at 27. For this reason, courts have held that suits against state officials in their official capacity will be treated as suits against the state itself. *Id.* Therefore, while state officials are, of course, literal people, "neither a State nor its officials acting in their official capacities are 'persons' under § 1983." *Will*, 491 U.S. at 71.

"[T]he state courts that comprise Pennsylvania's unified judicial system, including the courts of common pleas, are entitled to Eleventh Amendment immunity." *Harr v. Buczak*, No. CV 21-1555, 2024 WL 4064139, at *4 (W.D. Pa. Sept. 5, 2024) (citing *Benn v. First Judicial Dist. of Pa.*, 426 F.3d 233, 240–41 (3d Cir. 2005)). Magisterial judges fall within this judicial system. *Bradley v. Sayre*, No. 23-2854, 2024 WL 489281, at *1–2 (3d Cir. Feb. 8, 2024) (finding immune a magistrate judge who had issued an arrest warrant, accepted a criminal complaint, held the arraignment proceeding, and set bail). Therefore, Eleventh Amendment

14

immunity will apply to Plaintiff's claims against Judge Clancy unless one of the three exceptions—congressional abrogation, state waiver, or suits against state officials for injunctive and declaratory relief for an ongoing violation of federal law—apply. *See MCI Telecommunications Corp.*, 271 F.3d at 503.

"Pennsylvania has not waived its Eleventh Amendment immunity from suit in federal court, and Congress has not abrogated this immunity in enacting 42 U.S.C. § 1983." *Harr*, 2024 WL 4064139, at *4 (citing *Conklin v. Anthou*, 495 F. App'x 257, 263 (3d Cir. 2012); 42 Pa. Cons. Stat. § 8521(b)). Thus, the first two exceptions are inapplicable. Additionally, Plaintiff is seeking "monetary damages" (Doc. 1, p. 3), so the *Ex parte Young* doctrine likewise does not apply. Judge Clancy, being sued under § 1983 in her official capacity for monetary claims, is shielded by Eleventh Amendment immunity.

Plaintiff asserts that York County has received "federal funding to build the new local courthouse and it's [sic] York County Drug Task Force which is made up of state, federal and local officers recieve [sic] federal funding." (Doc. 26, p. 2). He further asserts that states lose their immunity "when they accept federal funding under the Rehabilitation Act and others." (*Id.*). However, Plaintiff has not sued Defendants under the Rehabilitation Act, but rather under 42 U.S.C. § 1983— which is the correct avenue for pursuing claims of federal civil rights violations. *Hafer*, 502 U.S. at 27–28. As the Defense notes, it is therefore not relevant for

15

purposes of § 1983 whether York County did, in fact, receive federal funding. *See Downey v. Pennsylvania Dep't of Corr.*, 968 F.3d 299, 310 (3d Cir. 2020) ("Pennsylvania has not waived its sovereign immunity defense in federal court. Further, Congress did not abrogate Eleventh Amendment immunity via § 1983."). Therefore, to the extent Plaintiff seeks to maintain a claim against Defendant Clancy in her official capacity, Defendant Clancy is shielded by Eleventh Amendment Immunity.[4]

    2. Judicial Immunity

    Unlike state officials sued in their official capacity, state officials who are sued in their individual capacities are considered persons within the meaning of § 1983, and "come to court as individuals." *Hafer*, 502 U.S. at 31, 27.  Accordingly, Eleventh Amendment immunity does not shield state actors sued in their individual

---

[4] To the extent Plaintiff's claims pursuant to § 1983 are dismissed for lack of jurisdiction, Plaintiff's pendent state tort claims must be dismissed as well unless there is an affirmative justification for maintaining jurisdiction over those claims. *See Borough of W. Mifflin v. Lancaster*, 45 F.3d 780, 788 (3d Cir. 2012) ("where the claim over which the district court has original jurisdiction is dismissed before trial, the district court must decline to decide the pendent state claims unless considerations of judicial economy, convenience, and fairness to the parties provide an affirmative justification for doing so."). No such justification exists here. In any event, even if such justification existed, as set forth *infra*, Plaintiff has failed to state a claim upon which relief can be granted for negligence or intentional infliction of emotional distress and so, both claims are subject to dismissal pursuant to Fed. R. Civ. P. 12(b)(6).

capacity. *See Adams v. Dep't of Corr.*, 348 F.R.D. 410, 418 (M.D. Pa. 2025) (Eleventh Amendment immunity extends to state agencies, state departments, and state officials sued in their official capacity, but not to state officials sued in individual capacity).

For a plaintiff to establish personal liability under § 1983, he or she must "show that the official, acting under color of state law, caused the deprivation of a federal right." *Id.* at 25 (internal quotation and citation removed). And because a defendant is being sued in their individual, rather than official capacity, he or she may assert immunity defenses. *Id.*

Taking Plaintiff's suit against Judge Clancy as one against her in an individual capacity, she may – and has – asserted a judicial immunity defense. (Doc. 23, p. 8). In short, there is long-standing precedent indicating that judges are immune from suit under 42 U.S.C. § 1983 for monetary damages from their judicial acts. *Gallas v. Supreme Ct. of Pennsylvania*, 211 F.3d 760, 768 (3d Cir. 2000) (citing *Mireles v. Waco*, 502 U.S. 9, 9, 112 S. Ct. 286, 287, 116 L.Ed.2d 9 (1991); *Forrester v. White*, 484 U.S. 219, 225–27, 108 S. Ct. 538, 543–44, 98 L.Ed.2d 555 (1988); *Stump v. Sparkman*, 435 U.S. 349, 355–56, 98 S. Ct. 1099, 1104, 55 L.Ed.2d 331 (1978)). Judges handle complicated cases with complex and polarizing issues: without judicial immunity, courts would anticipate an "avalanche of suits" and that it may lead to judges shying away from difficult rulings, which

would "detract from independent and impartial adjudication." *Id.* (quoting *Forrester*, 484 U.S. at 226–27). If a judge committed procedural mistakes, exceeded his or her authority, or even acted maliciously, there is nevertheless absolute immunity from liability for judicial acts. *Id.* at 769, 771.

As both the Plaintiff and Defense's briefs correctly indicate, there are two circumstances in which a plaintiff can overcome judicial immunity. First, immunity will be overcome if the challenged action was a nonjudicial act, that is, one taken outside of the judge's judicial capacity. *Mireles*, 502 U.S. at 11 (citing *Forrester*, 484 U.S. at 227–29; *Stump*, 435 U.S. at 360). In determining whether an act is "judicial," there are two factors to consider: (1) the nature of the act, namely whether it is a type of function that a judge usually performs, and (2) the expectations of the parties, that is, whether they interacted with the judge in his or her judicial capacity. *Stump*, 435 U.S at 362.

The second way in which judicial immunity can be overcome is if the act was judicial in nature, but "taken in the complete absence of all jurisdiction." *Mireles*, 502 U.S. at 12. If immunity is subject to a jurisdictional challenge, "the scope of the judge's jurisdiction must be construed broadly." *Stump*, 435 U.S. at 356. In *Stump v. Sparkman*, the Seventh Circuit Court of Appeals held that a state judge had acted outside of his jurisdiction because he had failed "to comply with elementary principles of procedural due process." *Id.* at 359. On appeal, the U.S.

18

Supreme Court explained that this ruling "misconceive[d] the doctrine of judicial immunity", and that the judge—despite "the commission of grave procedural errors" which resulted in a young woman being sterilized without her knowledge or consent—was nevertheless entitled to absolute immunity from liability for his judicial act. *Id.* at 359–60.

Plaintiff argues that judicial immunity does not apply to Judge Clancy's act of denying him bail on April 19, 2022, and that both grounds for overcoming judicial immunity apply. First, Plaintiff argues that the denial of bail was a nonjudicial act because the conversation between Judge Clancy and Commissioner Muldrow took place prior to his arraignment: he asserts that "Clancy['s] judicial capacity started once the arraignment process started," (Doc. 32, p. 1), and the fact that the conversation was pre-arraignment rendered it administrative rather than judicial. Second, he argues that Judge Clancy lacked jurisdiction because he "was denied bail without process." (Doc. 32, p. 2). Plaintiff states that "bail must be set for all bailable offenses and can only be denied with the proper requirements. Outside the proper elements being supplied the judge is lacking as it pertains to jurisdiction to deny bail." (*Id.*). We will address each argument in turn.

Considering both the nature of the act and the expectations of the parties results in the conclusion that Judge Clancy's denial of bail was a judicial act.

> Pennsylvania's magisterial district judges . . . are vested with jurisdiction over summary offenses (except those arising out of delinquent acts involving a juvenile), and "to preside at arraignments, fix and accept bail, except for offenses ... [ ]relating to murder[ ] and ... [ ]voluntary manslaughter[ ] ... and to issue warrants and perform duties of a similar nature, including the jurisdiction of a committing magistrate in all criminal proceedings."

*Harr*, 2024 WL 4064139, at *8 (quoting 42 Pa. Con. Stat. Ann. §§ 1515(a)(1) & (4)). The act of deciding whether to grant Plaintiff bail therefore clearly fell under the jurisdiction of Judge Clancy in her position as a magisterial district judge. It need not be decided whether proper procedures were followed at the arraignment on April 19, 2022, because even if the denial of bail "was done maliciously, negligently, or contrary to law, the doctrine of absolute judicial immunity would still bar [Parrish's] lawsuit against [Judge Clancy]." *Id.* Additionally, Plaintiff's bail was denied by the Judge while she presided over an arraignment proceeding: she unquestionably was acting in her official capacity. *See McAlester v. Brown*, 469 F.2d 1280, 1282 (5th Cir. 1972) (at the time of the act, the judge "was not in his judge's robes, he was not in the courtroom itself, and he may well have violated state and/or federal procedural requirements regarding contempt citations. Nevertheless, we discern . . . that Judge Brown was acting 'in his judicial jurisdiction'").

Plaintiff does not seem to deny that Defendant Clancy had authority to conduct an arraignment proceeding; instead, he argues that proper procedure was

not followed, and that her decision was influenced by Defendant Muldrow. (Doc. 1 at 2). As noted above, it need not be decided whether Judge Clancy followed adequate procedure before denying Plaintiff bail; however, assuming *arguendo* that she did improperly deny Plaintiff bail, that does not strip her of her judicial immunity. And even if Defendant Muldrow's call did influence her decision to deny Plaintiff bail, "our analysis must focus on the general nature of the challenged *action*, without inquiry into such 'specifics' as the judge's motive or the correctness of his or her decision." *Gallas*, 211 F.3d at 769 (emphasis added). Essentially, it is the act that the judge partook in that must be evaluated, not the outcome. For these reasons, and the fact that Judge Clancy, as a magisterial district judge, has jurisdiction to preside over an arraignment proceeding, she is entitled to judicial immunity.

### 3.    Recommendation as to Defendant Clancy

Regardless of whether Defendant Clancy is proceeding against Judge Clancy in her official capacity or individual capacity, Judge Clancy is shielded by immunity. To the extent Plaintiff is proceeding against her in her official capacity, she is shielded by Eleventh Amendment immunity; to the extent Plaintiff is proceeding against her in her individual capacity, she is protected by judicial immunity.  Therefore, we recommend that the claims against Defendant Clancy in her official capacity be dismissed pursuant to Fed. R. Civ. P. 12(b)(1) without

21

prejudice.[5]  It is recommended that Plaintiff's claims against Defendant Clancy in

her individual capacity be dismissed with prejudice, as amendment would be futile.

[6] *Bright v. Hoebich*, No. CV 24-9625 (RK) (TJB), 2025 WL 1311401, at *4 (D.N.J.

May 6, 2025) ("The Third Circuit has approved of dismissal with prejudice on

judicial immunity grounds. *See, e.g.*, *Williams v. Stack*, No. 23-2685, 2024 WL

3548766, at *1 (3d Cir. July 26, 2024) (per curiam) (approving a district court's

---

[5] A dismissal for lack of standing—or any other deficit in subject-matter
jurisdiction—must be one without prejudice, as a court that lacks jurisdiction has
no power to adjudicate and dispose of a claim on the merits. *See* Fed. R. Civ. P.
41(b); *Semtek Int'l Inc. v. Lockheed Martin Corp.*, 531 U.S. 497, 505, 121 S. Ct.
1021, 149 L.Ed.2d 32 (2001); *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83,
93–94, 118 S. Ct. 1003, 140 L.Ed.2d 210 (1998); *Interstate Petroleum Corp. v.
Morgan*, 249 F.3d 215, 222 (4th Cir. 2001) (en banc); *see also Brereton v.
Bountiful City Corp.*, 434 F.3d 1213, 1218 (10th Cir. 2006) ("[D]ismissals for lack
of jurisdiction should be without prejudice because the court, having determined
that it lacks jurisdiction over the action, is incapable of reaching a disposition on
the merits of the underlying claims."); *Frederiksen v. City of Lockport*, 384 F.3d
437, 438 (7th Cir. 2004) ("A suit dismissed for lack of jurisdiction cannot also be
dismissed 'with prejudice'; that's a disposition on the merits, which only a court
with jurisdiction may render. . . . 'No jurisdiction' and 'with prejudice' are
mutually exclusive." (internal citation omitted)); *In re Orthopedic "Bone Screw"
Prods. Liab. Litig.*, 132 F.3d 152, 155 (3d Cir. 1997) ("If a court then determines
that it lacks subject matter jurisdiction, it cannot decide the case on the merits. It
has no authority to do so."); *Merritts v. Richards*, 62 F.4th 764, 772 (3d Cir. 2023)
("[A] dismissal with prejudice on a threshold ground [such as lack of subject-
matter jurisdiction] should ordinarily be vacated and remanded with instructions
for the claim to be dismissed without prejudice.").

[6] Because we recommend that Plaintiff's claims against Defendant Clancy be
dismissed based upon Eleventh Amendment immunity or, alternatively, judicial
immunity, we need not address Defendant Clancy's additional arguments for
dismissal.

dismissal with prejudice when claims are dismissed on judicial immunity grounds); *Renchenski v. Ammerman*, No. 23-2519, 2024 WL 885120, at *2 (3d Cir. Mar. 1, 2024) (per curiam) (agreeing that amendment of complaint would be futile where the complaint is dismissed on immunity grounds); *Johnson v. U.S. Dep't of Just.*, 541 F. App'x 160, 162 (3d Cir. 2013) (summarily affirming dismissal with prejudice on judicial immunity grounds); *Waris v. Frick*, No. 06-5189, 2007 WL 954108, at *5 (E.D. Pa. Mar. 28, 2007) ("[T]he settled doctrine of absolute judicial immunity requires the dismissal with prejudice.")).

### B. Claims Against Defendant Mike Muldrow Are Subject to Dismissal

An issue may arise when, as here, a plaintiff has failed to indicate in their complaint whether they intended to sue an official in their individual or official capacity. In that case, the court must determine whether the defendant was on notice that he or she was being held personally liable. To do this, courts "consider the nature of the plaintiff's claims, requests for compensatory or punitive damages, and the nature of any defenses raised in response to the complaint, particularly claims for qualified immunity, to determine whether the defendant had actual knowledge of the potential for individual liability." *Rodgers v. Banks*, 344 F.3d 587, 594 (6th Cir. 2003) (internal quotation omitted). If a plaintiff requests monetary damages, that "provides some notice of [his or] her intent to hold Defendant personally liable." *Id.* at 594. And if a defendant "move[s] for summary

judgment on the issue of qualified immunity," that serves as another indicator that the plaintiff intended to sue in an individual capacity, and that the defense was on notice. *Id.*

In his Complaint, Plaintiff did not indicate whether he was proceeding against Defendant Muldrow in his individual or official capacity, and therefore the intent must be construed by looking at the nature of the claims and defenses. First, Plaintiff is only requesting monetary damages rather than injunctive or declaratory relief (Doc. 1, p. 3), indicating an intent to hold Commissioner Muldrow personally liable. Second, Defendant Muldrow demonstrated his awareness that he was being sued in a personal, rather than official, capacity because he only moved for qualified immunity rather than Eleventh Amendment immunity. For those reasons, the claims against Commissioner Muldrow will be addressed from the lens of individual capacity. We turn now to Defendant's arguments for dismissal as to each of Plaintiff's claims.

### 1.  Claim of Eighth Amendment Violation

The predominant violation alleged against Defendant under § 1983 is an Eighth Amendment violation for interference with Plaintiff's right to bail. Because Defendant Muldrow is entitled to qualified immunity, the claims against him should be dismissed.

The Eighth Amendment states that "[e]xcessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." U.S. Const. amend. VIII. This can result in a cognizable claim under 42 U.S.C. for violation of the right to reasonable bail. *Harrison v. Abraham*, No. CIV.A. 96-4262, 1997 WL 256970, at *20 (E.D. Pa. May 16, 1997), *aff'd*, 151 F.3d 1025 (3d Cir. 1998) (citing *Harvin v. Post*, No. 95-7888, 1997 WL 116985, at *4 (E.D. Pa. March 7, 1997)). Not only does the Eighth Amendment protect the right to reasonable bail, but "this reasoning logically leads to the conclusion that bail may not be arbitrarily denied . . . The constitutional right to be free from excessive bail thus shades into a protection against a denial of bail." *Sistrunk v. Lyons*, 646 F.2d 64, 70 n.23 (3d Cir. 1981). That said, the Eighth Amendment "does not create an absolute right to be free on bail." *Barrick v. Perry Cnty. Prison*, No. 1:22-CV-1432, 2023 WL 4631658, at *3 (M.D. Pa. July 19, 2023) (citing *United States v Salerno*, 481 U.S. 739, 752 (1987) ("the Eighth Amendment 'says nothing about whether bail shall be available at all.'")).

As discussed *supra*, it is the judge's responsibility to make bail determinations; however, it is "possible to allege a valid Eighth Amendment excessive bail claim against an individual that lacks authority to set bail." *Quiero v. Muniz*, No. 3:14-CV-00225, 2015 WL 13738994, at *6 (M.D. Pa. Aug. 3, 2015). To do so, a plaintiff must allege that the defendant played a significant role in or

25

manipulated the bond decision. *Rosado v. Figge*, No. 3:15CV275, 2015 WL 4356803, at *3 (M.D. Pa. July 14, 2015) (citing *James v. York Cnty. Police Dep't*, 160 F. App'x 126, 133 (3d Cir. 2005)); *see also Yoast v. Pottstown Borough*, 437 F. Supp. 3d 403, 427 (E.D. Pa. 2020), *aff'd,* No. 22-1960, 2023 WL 4418213 (3d Cir. July 10, 2023) ("[t]herefore, it is possible to state a claim for excessive bail against a police officer who manipulated, helped to shape, or exercised significant influence over the bond decision." (internal citation and quotation removed)); *Sheffer v. Ctr. Cnty.*, No. 4:18-CV-2080, 2019 WL 2621836, at *11 (M.D. Pa. May 23, 2019), *report and recommendation adopted sub nom.*, *aff'd sub nom. Sheffer v. Ctr. Cnty.*, 818 F. App'x 160 (3d Cir. 2020) ("[a] claim of excessive bail under the Eighth Amendment requires an assertion that a defendant played a significant role in the failure to set a reasonable bail.").

Accepting Plaintiff's allegations as true and interpreting them in the light most favorable to him, *Monroe*, 536 F.3d at 205, Parrish asserts that the Commissioner of the York City Police Department placed an *ex parte* call to the magisterial district judge presiding over his arraignment and advocated for him to be held without bail.[7] Plaintiff alleges specific information in his claim, including the caller's identity and the general substance of the conversation. (Doc. 1, pp. 2–

---

[7] The nature or capacity of Defendant's role as law enforcement is unknown from Plaintiff's complaint or Defense's brief.

3). Plaintiff also avers that Defendant indicated the call did play a role in her decision to deny bail. (Doc. 33, p. 1). Notably, Defendant Muldrow does not seem to deny that this call took place, but rather, "viewing Plaintiff's factual allegations as stated, Commissioner Muldrow contacted Judge Clancy about Plaintiff's bail out of his concern for public safety." (Doc. 28, p. 11).

However, it need not be decided whether Muldrow's actions violated Parrish's Eighth Amendment rights, as Muldrow is entitled to qualified immunity. Qualified immunity attempts to balance "the need to hold public officials accountable when they exercise power irresponsibly" with "the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Pearson v. Callahan*, 555 U.S. 223, 231, 129 S. Ct. 808, 815, 172 L. Ed. 2d 565 (2009). Therefore, an official sued under § 1983 will be found to be immune unless the actor "(1) violated a constitutional right that (2) was clearly established when he acted." *Stringer v. Cnty. of Bucks*, 141 F.4th 76, 85 (3d Cir. 2025). For a right to be considered clearly established, a reasonable official must know that his actions violate that right: either because "existing precedent [] placed the statutory or constitutional question beyond debate," *Ashcroft v. al-Kidd*, 563 U.S. 731, 741, 131 S. Ct. 2074, 2083, 179 L. Ed. 2d 1149 (2011), or, it is a "patently obvious constitutional violation." *Stringer*, 141 F.4th at 85. If "the law was not clearly established or a reasonable official could have believed the actions

27

to be lawful, the official is entitled to immunity." *Leveto v. Lapina*, 258 F.3d 156, 163 (3d Cir. 2001).

Because qualified immunity grants an official immunity from suit, this defense should be raised "at the earliest possible stage in litigation." *Pearson*, 555 U.S. at 232 (internal citation omitted). That said, it may be difficult to come to such a decision at the pleading stage, as qualified immunity determination is a fact-intensive inquiry. *Stringer*, 141 F.4th at 85. Immunity will therefore only be upheld on a 12(b)(6) motion to dismiss "when the immunity is established on the face of the complaint." *Id.* at 86 (quoting *Thomas v. Indep. Twp.*, 463 F.3d 285, 291 (3d Cir. 2006)). As all affirmative defenses, the burden rests on the defense to adequately plead qualified immunity. *Thomas*, 463 F.3d at 292 (citing Fed. R. Civ. P. 8(c)). Long-standing precedent holds "that a plaintiff has no pleading burden to anticipate or overcome a qualified immunity defense, and a mere absence of detailed factual allegations supporting a plaintiff's claim for relief under § 1983 does not warrant dismissal of the complaint or establish defendants' immunity." *Thomas*, 463 F.3d at 289.

We then approach the two-part inquiry. Even if Plaintiff were to have met the first prong by stating an Eighth Amendment bail interference claim, the second prong bars Plaintiff's claims on the grounds of qualified immunity. The second prong asks whether the right violated is one that was clearly established. This

28

inquiry may "present[] unique difficulties at the pleading stage," however, "qualified immunity will be upheld on a 12(b)(6) motion" where "immunity is established on the face of the complaint." *Stringer*, 141 F.4th at 85–86. *See, e.g.*, *Leveto*, 258 F.3d at 166 (despite asserting a valid Fourth Amendment claim, the Complaint was dismissed because the agents were entitled to qualified immunity: the court held that a reasonable officer could have believed patting down the Plaintiff was permitted under the Fourth Amendment); *Weimer v. Cnty. of Fayette, Pennsylvania*, 972 F.3d 177, 191 (3d Cir. 2020) (finding law enforcement entitled to qualified immunity because a single district court case cannot be the basis to show that the right was clearly established).

Here, the right to be free from a police commissioner offering his bail opinion to a magistrate judge is *not* one that was clearly established at the time of Defendant Muldrow's action. The Defendant calling Judge Clancy did not constitute an act that every reasonable officer would understand to be violating Plaintiff's Eighth Amendment rights. The purpose of qualified immunity is to protect officials from personal liability when they inevitably err—including situations when the errors may have the unfortunate result of violating someone's constitutional rights. A law enforcement officer providing his input into a bond decision is an act that a reasonable officer could believe was lawful. It is therefore recommended that the Motion to Dismiss be granted as to the Eighth Amendment

29

violation, as Defendant Muldrow has established qualified immunity. Plaintiff's claim should be denied with prejudice, as amendment would be futile due to Defendant Muldrow's immunity.

## 2. Claim of Conspiracy

To properly plead a conspiracy under 42 U.S.C. § 1983, "a plaintiff must prove that persons acting under color of state law 'reached an understanding' to deprive him of his constitutional rights." *Jutrowski v. Twp. of Riverdale*, 904 F.3d 280, 293–94 (3d Cir. 2018) (citing *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 150–52, 90 S. Ct. 1598, 26 L.Ed.2d 142 (1970)). Once a plaintiff establishes that the object of the conspiracy was to deprive him of a federally protected right, the plaintiff "must provide some factual basis to support the existence of the elements of a conspiracy: agreement and concerted action." *Id.* at 295. Agreement, which has been held to be the *sine qua non* of conspiracy, consists of a meeting of the minds, such that the state actors reached a common understanding to deny plaintiff his rights. *Panayotides v. Rabenold*, 35 F. Supp. 2d 411, 419 (E.D. Pa. 1999), *aff'd*, 210 F.3d 358 (3d Cir. 2000).

The courts understand that due to the inherent secretive nature of conspiracies, direct evidence may be rare and therefore plaintiffs may "rely on circumstantial inferences at the dismissal stage." *Burke v. Bachert*, 702 F. Supp. 3d

347, 364 (E.D. Pa. 2023). Nevertheless, a "plaintiff must make factual allegations of combination, agreement, or understanding among all or between any of the defendants or coconspirators to plot, plan, or conspire to carry out the alleged chain of events." *Spencer v. Steinman*, 968 F. Supp. 1011, 1020 (E.D. Pa. 1997) (internal citation and quotation removed).

The heart of the alleged conspiracy in this case is the phone call between Commissioner Muldrow and Judge Clancy, where they "conspired to deny the Plaintiff his constitutional right to bail." (Doc. 33, p. 2). Even though Judge Clancy is immune from suit, Plaintiff can still assert a § 1983 cause of action "alleging a conspiracy involving the defendant and Judge [] to violate his constitutional rights." *Spencer v. Steinman*, 968 F. Supp. 1011, 1019–20 (E.D. Pa. 1997). However, in construing the facts in the light most favorable to the Plaintiff, it cannot be said that he has sufficiently stated a cause of action. The allegation of a phone call is insufficient to show that there was a meeting of the minds amongst both Judge Clancy and Commissioner Muldrow to deny Mr. Parrish bail. Even if the Complaint were able to be construed as stating a bail interference claim, that does not establish that Judge Clancy intended to enter into any sort of agreement or conspiracy. Therefore, it is recommended that this claim be dismissed without prejudice, giving Plaintiff leave to amend.

3. Claim of Due Process Violation

31

The Due Process Clause provides that no state shall "deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV. Plaintiff asserts that Commissioner Muldrow violated his due process right to bail: " . . . Pennsylvania establishes a right to bail for bailable offenses and has a process in place for the denial of bail. With that said the Plaintiff was denied due process because of Muldrow's actions" (Doc. 33 at 1). However, as discussed in depth *supra*, "Pennsylvania law reserves bail-setting authority to the magisterial district judge (MDJ) or other judge that has jurisdiction over the case. Pa. R. Crim. P. 103." *Bell v. City of Harrisburg*, No. 1:08-CV-01563, 2010 WL 5559503, at *12 (M.D. Pa. June 28, 2010), *report and recommendation adopted*, No. 1:08-CV-01563, 2011 WL 66114 (M.D. Pa. Jan. 10, 2011), *aff'd*, 457 F. App'x 164 (3d Cir. 2012).

While Plaintiff has averred that Defendant Muldrow interfered with the ultimate bail decision by placing the phone call to Judge Clancy, Plaintiff has failed to state how, specifically, the Defendant interfered with his due process rights—especially considering that a Police Commissioner is not responsible for the arraignment process or bail hearing. Therefore, Plaintiff has failed to state a claim with respect to Defendant Muldrow, and it is recommended that Plaintiff's claims be dismissed without prejudice, with leave to amend. *See, e.g.*, *Dukes v. Demarco*, No. CV 23-3899, 2024 WL 2151244, at *3 (D.N.J. May 14, 2024) ("Plaintiffs

argue that their constitutional right to bail was violated in some fashion due to the application or enforcement of New Jersey's Bail Reform Act. However, they fail to state when and how each of the two named Defendants *specifically* violated his constitutional rights.") (emphasis in original).

4. Claim of Equal Protection Violation

The Equal Protection Clause is a section of the Fourteenth Amendment to the U.S. Constitution, which instructs that no state shall "deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1. To state a viable § 1983 claim under the Equal Protection Clause, Plaintiff must present facts that show "purposeful discrimination" and "demonstrate that they received different treatment from that received by other individuals similarly situated." *Chambers ex rel. Chambers v. Sch. Dist. Of Philadelphia Bd of Educ.*, 587 F.3d 176, 196 (3d Cir. 2009). This required alleging three elements: (1) Plaintiff was a member of a protected class; (2) Plaintiff was similarly situated to members of an unprotected class, and (3) Plaintiff was treated differently from members of that unprotected class. *Green v. Chester Upland Sch. Dist.*, 89 F. Supp. 3d 682, 693 (E.D. Pa. 2015), *aff'd sub nom. A.G. v. Chester Upland Sch. Dist.*, 655 F. App'x 125 (3d Cir. 2016).

Mr. Parrish avers that Black criminal defendants are denied bail at a higher rate than their non-Black counterparts who are charged with similar, or even more serious, crimes. (Doc. 29, p. 2). While this may sufficiently state the elements that constitute an equal protection violation under § 1983, Commissioner Muldrow is not a proper defendant. The Complaint does not state why or how Defendant Muldrow specifically violated Plaintiff's equal protection rights. The only allegation that Plaintiff made against Defendant Muldrow is that he made one phone call in one case: he does not allege that Muldrow plays a wider role in bail determinations in York County, or that he has any authority over the process. *See Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988) ("A defendant in a civil rights action must have personal involvement in the alleged wrongs"). Because Plaintiff has not provided any allegation of Defendant Muldrow's personal involvement, the claim should be dismissed without prejudice with leave to amend.

**VI. Plaintiff Fails to State a Claim for Any State Law Violations**

Under a section of his Complaint entitled "Legal Claims," Plaintiff lists "violation of due process, civil conspiracy to deny due process, negligence, violation of equal protection." (Doc. 1, p. 3). The following section of the complaint is entitled "Injury" and states "loss of liberty and intentional infliction of emotional distress." (*Id.*). Given the allegations in the sparse body of the Complaint, as discussed above, it appears that the Plaintiff is seeking to raise

34

federal civil rights complaints under § 1983 as well as for a conspiracy to violate his civil rights. The Complaint contains no allegations regarding either a negligence claim or a claim for intentional infliction of emotional distress under state law—namely, Plaintiff failed to allege who the defendants would be and how their actions would support either of his claims. Nonetheless, Defendants attempted to respond to Plaintiff's claims in their briefs. Plaintiff, in his brief, stated he is seeking to assert a state law negligence claim although he makes no allegations in support of that claim. Accordingly, to the extent that the Complaint is construed to assert a state law claim for negligence and for intentional infliction of emotional distress, those claims should be dismissed, and Plaintiff be granted thirty days in which to file an Amended Complaint consistent with the requirements of Federal Rule of Civil Procedure 8.

## VII. Recommendation

For the foregoing reasons, it is recommended that:

Defendant Clancy's Motion to Dismiss (Doc. 22) be **GRANTED** as follows: claims against Clancy in her official capacity dismissed based upon Eleventh Amendment Immunity without prejudice; claims against Clancy in her individual capacity be dismissed based upon judicial immunity with prejudice.

Defendant Muldrow's Motion to Dismiss (Doc. 25) be **GRANTED** as follows:

1. The Motion to Dismiss the Eighth Amendment claim be **GRANTED** with prejudice,

2. The Motion to Dismiss the Conspiracy claim be **GRANTED** without prejudice,

3. The Motion to Dismiss the Due Process claim be **GRANTED** without prejudice,

4. The Motion to Dismiss the Equal Protection claim be **GRANTED** without prejudice,

5. And the Motion to Dismiss the State Law claims be **GRANTED** without prejudice.

Plaintiff should be granted thirty days to file any Amended Complaint for the claims of conspiracy, due process violation, equal protection violation, and any state law violations, under the condition that it complies with Rule 8 of the Federal Rules of Civil Procedure.

Dated: July 24, 2025                          **/s/ Leo A. Latella**
                                              Leo A. Latella
                                              United States Magistrate Judge

**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| Donte Darrell Parrish | CIVIL ACTION NO. 1:24-CV-00670 |
| Plaintiff, | |
| v. | (Judge Munley) |
| | (Magistrate Judge Latella) |
| Mike Muldrow, et al., | |
| Defendants. | |

## <u>NOTICE</u>

**NOTICE IS HEREBY GIVEN** that the undersigned has entered the

forgoing **Report and Recommendation** dated July 24, 2025.

Any party may obtain review of the Report and Recommendation pursuant

to Local Rule 72.3, which provides:

> Any party may object to a magistrate judge's proposed findings, recommendations or report addressing a motion or matter described in 28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the disposition of a prisoner case or a habeas corpus petition within fourteen (14) days after being served with a copy thereof. Such party shall file with the clerk of court, and serve on the magistrate judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections. The briefing requirements set forth in Local Rule 72.2 shall apply. A judge shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge, however, need conduct a new hearing only in his or her discretion or where required by law, and may

consider the record developed before the magistrate judge, making his or her own determination on the basis of that record. The judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.


Dated: July 24, 2025                    **/s/ Leo A. Latella**
                                        Leo A. Latella
                                        United States Magistrate Judge